**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| RUTH HRYCAK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.: N18C-05-246 EMD |
| | ) | |
| PUBLIC STORAGE, INC. | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: June 25, 2019
Decided: September 30, 2019

*Upon Defendant Public Storage, Inc.'s Motion for Summary Judgment*
***GRANTED***

Philip M. Finestrauss, Esquire, PHILIP M. FINESTRAUSS, P.A, Wilmington, Delaware
*Attorney for Plaintiff Ruth Hrycak.*

David W. Giattino, Esquire, MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP, Wilmington, Delaware *Attorney for Defendant Public Storage Inc.*

**DAVIS, J.**

## I. INTRODUCTION

This is a civil action based on a claim of negligence. Plaintiff Ruth Hrycak brought a negligence action against Defendant Public Storage, Inc. ("Public Storage"), after she slipped and fell while walking to her storage unit. Ms. Hrycak asserts that her injuries were a direct and proximate result of Public Storage's negligent conduct. Ms. Hrycak claims she is entitled to compensation for general, compensatory, and special damages, including pain and suffering, the costs of the accident, and pre and post judgment interest.

After answering, Public Storage filed its Motion for Summary Judgment for Defendant (the "Motion"). Public Storage contends it is entitled to judgment because the lease agreement

between Public Storage and Ms. Hrycak contains a limitation of liability provision that bars Ms. Hrycak's claim. Public Storage asserts that this provision exculpates it of any liability to Ms. Hrycak for its own and its employees' negligence because it is clear and unequivocal, not voidable as unconscionable, and not void as against public policy.

For the reasons set forth below, the Court **GRANTS** the Motion.

## II. RELEVANT FACTS

### A. FACTUAL BACKGROUND

On September 10, 2015, Ms. Hrycak rented a self-storage unit from Public Storage at 3800 Kirkwood Highway, Wilmington, Delaware 19808-5108 (the "Premises").[1] Ms. Hrycak rented a unit measuring 10 feet by 15 feet at a rate of $201 per month.[2] Ms. Hrycak signed a Lease/Rental Agreement (the "Agreement"), initialing seven times and signing her name on the last page of the contract.[3]

Paragraph 7 of the Agreement contains the limitation of liability language (the "Provision"). The Provision provides:

> LIMITATION OF OWNERS LIABILITY: INDEMNITY. **Owner and Owner's Agents will have no responsibility to Occupant or to any other person for any loss, liability, claim, expense, damage to property or injury to persons ("Loss") from any cause, including without limitation, Owner's and Owner's Agents active or passive acts, omissions, negligence or conversion, unless the Loss is directly caused by Owner's fraud, willful injury or willful violation of law. Occupant shall indemnify and hold Owner and Owner's Agents harmless from any loss incurred by Owner and Owner's Agents in any way arising out of Occupants use of the Premises or the Property including, but not limited to, claims of injury or loss by Occupant's visitors or invitees. Occupant agrees that Owner's and Owner's Agents' total responsibility for any Loss from any cause whatsoever will not exceed a total of $5,000. By INITIALING HERE __.** Occupant acknowledges that he understands and agrees to the provisions of this paragraph.[4]

---

[1] Motion, Ex. A.
[2] *Id.*
[3] *Id.*
[4] *Id.* at ¶ 7.

Ms. Hrycak put her initials at the end of the Provision.[5]

On or about May 31, 2016, at approximately 4:00 p.m., Ms. Hrycak was walking to her storage unit as an invitee of Public Storage when she slipped and fell.[6] Ms. Hrycak alleges that she slipped and fell in a "poorly lit area with [an] accumulation of water."[7] Ms. Hrycak sustained serious and potentially permanent physical and emotional injuries, including but not limited to, bruising of the left hip, a lateral meniscus tear to the left knee, requiring surgery, with attendant scarring, pain and suffering, and loss of enjoyment of life.[8] Further, Ms. Hrycak asserts that her injuries have resulted in her incurring hospital, medical, and travel expenses, as well as lost wages and a diminution of earning capacity.[9]

## B.    PROCEDURAL HISTORY

Ms. Hrycak filed a complaint (the "Complaint") against Public Storage[10] on May 25, 2018. In the Complaint, Ms. Hrycak alleges that her injuries were proximately caused by the negligence of Public Storage because it (1) failed to conduct reasonable safety inspections to discover dangerous conditions; (2) failed to take reasonable steps to cure dangerous conditions; (3) failed to dry water from common walkways; (4) failed to warn of dangerous conditions; (5) failed to rope off or otherwise make safe maintenance storage areas; (6) failed to make walkways and other common areas safe for business invitees; and (7) failed to provide adequate lighting for common walkway areas.[11] Public Storage filed an answer to the Complaint (the "Answer") on October 26, 2018.

---

[5] *Id.*
[6] Compl. ¶ 3.
[7] *Id.*
[8] *Id.* at ¶ 5.
[9] *Id.* at ¶ 6-7.
[10] Public Storage, which is a statutory trust that is organized under Maryland law, was misnamed in the Complaint, D.I. 1, Transaction ID 62068178, as Public Storage, Inc.
[11] Compl. ¶ 4.

Public Storage filed the Motion on April 18, 2019.  On May 2, 2019, Ms. Hrycak filed Plaintiff's Objection to Defendant's Motion for Summary Judgment (the "Objection").  On May 10, 2019, Public Storage filed Defendant's Reply to the Plaintiff's Objection to Defendant's Motion for Summary Judgment (the "Reply").  On June 24, 2019, Ms. Hrycak sent a letter to the Court (the "Letter") requesting leave to substitute an ordinance listed in the Objection in light of further research.  On June 24, 2019, Public Storage filed Defendant's Objection to the Plaintiff's Request for Leave to Make a New Argument at Oral Argument.  The Court held a hearing on the Motion on June 25, 2019.  At the conclusion of that hearing, the Court took the Motion under advisement.

## III. PARTIES' CONTENTIONS

### A. DEFENDANT'S CONTENTIONS

Public Storage argues the Court should grant the Motion because Ms. Hrycak's claim is barred by the clear and unambiguous Provision in the Agreement.  Public Storage also argues that the Release is neither void nor voidable.  In the Reply, Public Storage asserts that the Premises are not within the corporate limits of Wilmington, and that they are not subject to the Wilmington Code Provisions, which the Plaintiff cites in the Objection.  Public Storage also argues that the Premises is not residential, and therefore not in violation of any statutory duty cited by Ms. Hrycak in the Objection.

In the Letter, Ms. Hrycak notes her mistake regarding the Wilmington location and seeks to substitute an argument regarding New Castle County ordinances.  At the hearing, Public Storage objected to Ms. Hrycak's request to substitute statutes in the Letter.  Public Storage contends that the New Castle County Property Maintenance Code is not the type of public policy that invalidates the Release, and thus Ms. Hrycak's claim should be barred.

4

## B. PLAINTIFF'S CONTENTIONS

In the Objection, Ms. Hrycak notes that in addition to general allegations of negligence, the Complaint alleges Public Storage's failure to provide adequate lighting for common walkway areas to be a proximate cause of her injuries. At oral argument, Ms. Hrycak asserted that Public Storage violated a New Castle County Property Maintenance Code provision. Ms. Hrycak argues that the context of the alleged negligence violates Public Storage's statutory duty owed to her. Additionally, Ms. Hrycak contends that there is an inherent material dispute of fact as to the lighting in the area where the slip and fall occurred.

## IV. STANDARD OF REVIEW

The standard of review on a motion for summary judgment is well-settled. The Court's principal function when considering a motion for summary judgment is to examine the record to determine whether genuine issues of material fact exist, "but not to decide such issues."[12] Summary judgment will be granted if, after viewing the record in a light most favorable to a nonmoving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.[13] If, however, the record reveals that material facts are in dispute, or if the factual record has not been developed thoroughly enough to allow the Court to apply the law to the factual record, then summary judgment will not be granted.[14] The moving party bears the initial burden of demonstrating that the undisputed facts support his claims or defenses.[15] If

---

[12] *Merrill v. Crothall-American Inc.*, 606 A.2d 96, 99-100 (Del. 1992) (internal citations omitted); *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.*, 312 A.2d 322, 325 (Del. Super. 1973).

[13] *Id.*

[14] *See Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962); *see also Cook v. City of Harrington*, 1990 WL 35244 at *3 (Del. Super. Feb. 22, 1990) (citing *Ebersole*, 180 A.2d at 467) ("Summary judgment will not be granted under any circumstances when the record indicates . . . that it is desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances.").

[15] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1970) (citing *Ebersole*, 180 A.2d at 470).

the motion is properly supported, then the burden shifts to the non-moving party to demonstrate that there are material issues of fact for the resolution by the ultimate fact-finder.[16]

## V. DISCUSSION

### A. THE PROVISION IN THE AGREEMENT IS VALID.

The Supreme Court has previously recognized that a contractual release of prospective negligence may be valid.[17] "Under Delaware law, parties may enter into an agreement that relieves a business owner of liability for injuries to business invitees that result from the owner's negligent conduct."[18] A release of negligence is "valid if it meets three requirements. First, the release must not be ambiguous. Second, the release must not be unconscionable. Finally, the release must not be against public policy."[19]

Delaware case law is consistent on limitation of liability provisions. For example, in *Ketler v. PFPA*, the plaintiff was a member at a Planet Fitness gym and alleged he was injured when a cable broke while he was operating a rowing machine.[20] The plaintiff had signed a membership agreement containing a waiver releasing the Planet Fitness gym from prospective negligence.[21] The Supreme Court upheld the Court's determination that the release of

---

[16] *See Brzoska v. Olsen*, 668 A.2d 1355, 1364 (Del. 1995).
[17] *Ketler v. PFPA, LLC*, 132 A.3d 746 (Del. 2016); *Riverbend Cmty., LLC v. Green Stone Eng'g, LLC*, 55 A.3d 330, 336 (Del. 2012).
[18] *Lynam v. Blue Diamond LLC*, 2016 WL 5793725, at *3 (Del. Super. Oct. 4, 2016) (citing *Ketler,* 132 A.3d at (upholding "hold harmless" agreements and releases that relieve a proprietor from liability for its own negligent activities)).
[19] *Tucker v. Albun, Inc.*, 1999 WL 1241073, at *2 (Del. Super. Sept. 27, 1999) (citing *Hallman v. Dover Downs, Inc.,* 1986 WL 535, at *2-5 (D. Del. Dec. 31, 1986) and *Egan & Sons Air Conditioning Co. v. Gen. Motors Corp.*, 1988 WL 47314, at *3 (Del. Super. Apr. 27, 1988)); *see also Ketler*, 132 A.3d at 747-48.
[20] *Ketler*, 132 A.3d at 747.
[21] The membership agreement in *Ketler*, 132 A.3d at 747, contained the following waiver:
    I understand and expressly agree that my use of this Planet Fitness facility . . . involves the risk of injury to me or my guest whether caused by me or not. I understand that these risks can range from minor injuries to major injuries including death. In consideration of my participation in the activities and use of the facilities offered by Planet Fitness, I understand and voluntarily accept this risk and agree that Planet Fitness . . . will not be liable for any injury, including, without limitation, personal, bodily, or mental injury . . . resulting from the negligence of Planet Fitness or anyone on Planet Fitness' behalf whether related to exercise or not. Accordingly, I do hereby forever release and discharge Planet Fitness from any and all claims, demands, injuries, damages, actions or causes of

6

prospective negligence was valid because it was clear and unequivocal, not unconscionable, and not against public policy.[22]

In addition, in *Hong v. Hockessin Athletic Club*, the plaintiff alleged she and her children were members of the Hockessin Athletic Club and that her three-year-old son was injured after falling from indoor playground equipment.[23]  Like in *Ketler*, the plaintiff had signed a membership agreement containing a waiver and release of liability.[24]  The Court granted summary judgment for Hockessin Athletic Club and held that the Plaintiff's claims were barred because of the liability waiver.[25]

Upon review of the Provision and the record, the Court finds that the Provision is a valid limitation of liability as it is (1) unambiguous, (2) not unconscionable, and (3) not against public policy.  Given that the Provision satisfies the criteria established by the Supreme Court, the Provision is valid and prevents Ms. Hrycak's right to file suit against Public Storage on negligence claims.[26]

---

action. I further understand and acknowledge that . . . Planet Fitness may not be held liable for defective products.

[22] *Id.* at 747-48.

[23] *Hong v. Hockessin Athletic Club*, 2012 WL 2948186, at *1 (Del. Super. July 18, 2012).

[24] The membership agreement in *Hong*, 2012 WL 2948186, at *1-2, contained the following waiver:

Member hereby acknowledges that in using the facilities, programs and equipment of HAC, he/she does so entirely at his/her own risk and assume[s] the risk of any injury and/or damage while engaging in any physical exercise or activity or use of any club facility on the premises. This assumption of the risk included, without limitation, Member's use of any exercise equipment (mechanical or otherwise), the locker room, sidewalk, parking lot, stairs, pool, whirlpool, sauna, steam room, racquet courts, lobby hallways, or any equipment in the facility. Member further agrees to assume the risk in participating in any activity, class, program, instruction, or any event sponsored by HAC. . . . By executing this Agreement, Member does HEREBY WAIVE, RELEASE AND FOREVER DISCHARGE, HAC and its past, present and future subsidiaries, affiliates . . . from all claims, demands, injuries, damages, actions or causes of action, and from all acts of active or passive negligence on the part of such company . . . MEMBER ACKNOWLEDGES THAT HE/SHE HAS CAREFULLY READ THIS AGREEMENT AND FULLY UNDERSTANDS THAT IT IS A RELEASE OF LIABILITY AND EXPRESS ASSUMPTION OF RISK AND INDEMNIFICATION. MEMBER IS AWARE AND AGREES THAT BY EXECUTING THIS WAIVER AND RELEASE, HE/SHE IS GIVING UP THE RIGHT TO BRING LEGAL ACTION OR ASSERT A CLAIM AGAINST HAC FOR ITS NEGLIGENCE….

[25] *Id.* at *3-4.

[26] *See Ketler*, 132 A.3d at 747-48.

### 1. Clear and Unequivocal

Because "contractual provisions which purport to relieve a party from liability for matters resulting from its own negligence are not favored" in Delaware, a release of prospective negligence must be "crystal clear and unequivocal" to insulate a party from liability.[27] "[A] contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings."[28]

In *Ketler*, the Delaware Supreme Court held that the language in the waiver was clear and unequivocal because it expressly released the owners of the gym "from any liability for any injury resulting from the negligence of Planet Fitness, whether related to exercise or not."[29] In *Hong*, the Court rejected the plaintiff's argument that the waiver language was ambiguous.[30] The Court noted that the Plaintiff "signed a comprehensive waiver of liability and release in connection with her Membership Agreement that expressly stated that she (and all others on her membership) assumed the risk of 'any injury or damage incurred while engaging in any physical exercise or activity or use of any club facility on the premises,' including the use of 'any equipment in the facility' and participation 'in any activity, class, program, instruction, or any event sponsored by HAC.'"[31]

Here, Public Storage argues that the sole interpretation of the Provision is: Public Storage is "no[t] responsib[le] to" Hrycak for "any loss, liability, claim, expense, damage to property or injury to persons" arising "from any cause, including . . . [the] acts, omissions, [or] negligence" of Public Storage and its agents unless the "direct[] cause[]" of the harm was "fraud, [a] willful

---

[27] *J.A. Jones Constr. Co. v. City of Dover*, 372 A.2d 540, 552-53 (Del. Super. 1977); *see also Ketler*, 132 A.3d at 747; *Riverbend Cmty., LLC v. Green Stone Eng'g, LLC*, 55 A.3d 330, 336 (Del. 2012).
[28] *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992) (citing *Hallowell v. State Farm Mut. Auto. Ins. Co.*, 443 A.2d 925, 926 (Del. 1982).
[29] *Ketler*, 132 A.3d at 747.
[30] *Hong*, 2012 WL 2948186, at *3 (Del. Super. July 18, 2012).
[31] *Id.*

injury[,] or [a] willful violation of law" by Public Storage. [32]   Public Storage asserts that this interpretation is the plain meaning of the Provisions.  Further, Public Storage argues that the Provision's language is broad and applies to Ms. Hrycak's injuries in the present case.  Public Storage asserts that the Release absolves it of any liability for Ms. Hrycak's injuries.  In the Reply, Ms. Hrycak does not respond to the interpretation of the Release or assert that there is any ambiguity of the Release language.

The Court finds that the Provision is clear and unequivocal.  The Provision expressly limits Public Storage's liability for any "injury to persons" arising "from any cause, including . . . [the] negligence" of Public Storage.[33]  The Provision does not apply if the harm was a result of fraud, a willful injury, or a willful violation of law by Public Storage.  Ms. Hrycak's slip and fall, as well as her resulting injuries, clearly falls within "any cause" of injury, including negligence on the part of Public Storage.  Additionally, Ms. Hrycak does not allege that the slip and fall was a result of Public Storage engaging in fraud, willful injury, or a willful violation of law.  As such, Public Storage is exculpated from liability for any injuries, including those which are a result of ordinary negligence.  Given the Agreement's specific language and its application to the present facts, the Provision satisfies the first criterion.

### 2.  Not Unconscionable

To be valid, a release of prospective negligence may not be unconscionable.[34]  In *Ketler*, the Delaware Supreme Court described unconscionability as "a concept that is used sparingly."[35]  Traditionally, a contract is unconscionable where "no man in his senses and not under delusion

---

[32] Motion, Ex. A, ¶ 7.
[33] *Id.*
[34] *Ketler*, 132 A.3d at 748.
[35] *Id.* (citing *Progressive Int'l Corp. v. E.I. Du Pont de Nemours & Co.*, 2002 WL 1558382, at *11 (Del. Ch. July 9, 2002).

would make on the one hand, and as no honest or fair man would accept, on the other."[36]

Disparity in the bargaining powers of the contracting parties is not sufficient to support a finding of unconscionability. "[T]here must be an absence of meaningful choice and contract terms unreasonably favorable to one of the parties."[37]

In the Objection, Ms. Hrycak calls the Release "an adhesion type contractual waiver,"[38] however, she does not assert any facts or cases to support the claim that the contract was unconscionable. In the Motion, Public Storage argues "what Public Storage leased to Hrycak space to store property is not essential, so she could have just walked away from the Lease."[39]

The Court finds that the Agreement and the Provision are not unconscionable. Ms. Hrycak had a meaningful choice when she entered into the Agreement, she was free to accept the terms of the Agreement or not. A place to store personal property is not an essential good. Ms. Hrycak continued to rent the storage unit from September 2015 to the time of the accident in May 2016. If Ms. Hrycak felt the terms of the Agreement were in any way unfair she was free to terminate the Agreement. There is no evidence indicating that the Agreement was voidable as unconscionable. The Court, therefore, finds that the Provision satisfies the second criterion.

### 3. Does Not Violate Public Policy

The Release must not violate public policy. "The public policy of this state is typically determined by the Delaware General Assembly."[40] "A release of tort liability is unenforceable to

---

[36] *Ketler*, 132 A.3d at 748 (quoting *Williams v. Walker–Thomas Furniture Co.*, 350 F.2d 445, 450 n.12 (D.C. Cir. 1965)).
[37] *Tulowitzki v. Atl. Richfield Co.*, 396 A.2d 956, 960 (Del. 1978).
[38] Objection, ¶ 6.
[39] Motion, ¶ 10 (citing *Taylor v. Pub. Storage*, 2012 WL 3879248, at *5 (W.D. Wash. Sept. 6, 2012) (applying Washington law) ("A self-storage facility does not fit within the category of 'essential public services[]' . . .")) (internal quotation omitted).
[40] *Ketler*, 132 A.3d at 748.

exculpate a party for statutory violations where the plaintiff is a member of the class protected by the statute."[41]

In *Ketler*, there were no Delaware statutes identified on the validity of a release of prospective negligence.[42] The plaintiffs in *Ketler*, attempted to "argue that the release violates the public policy embodied in the principle that a property owner has a duty to make his property safe for business invitees."[43] However, the Supreme Court rejected this argument, stating that [t]he public policy of this state is typically determined by the Delaware General Assembly."[44] The Supreme Court held that "a general release by its nature releases a party from a potential liability otherwise imposed by law. *The public policy involved must be one which disapproves of the release*."[45]

In *Slowe v. Pike Creek Court Club*, a guest fell on a set of negligently maintained stairs in the swimming pool at a health club and was not barred from bringing suit.[46] The Court held that the liability waiver[47] in the membership agreement was not specific in excusing the health club from liability for negligent acts and that the risk of the injury was not assumed.[48] However, the *Slowe* court did leave open the possibility that "a properly-worded release might effect a waiver of premises liability."[49] The Court held that "enforcing a liability waiver to bar a negligence claim related to the operation and maintenance of a public pool could impermissibly undermine

---

[41] *Slowe v. Pike Creek Court Club, Inc.*, 2008 WL 5115035, at *5 (Del. Super. Dec. 4, 2008).
[42] *Ketler*, 132 A.3d at 748.
[43] *Id.*
[44] *Id.* (emphasis added).
[45] *Id.*
[46] *Slowe*, 2008 WL 5115035, at *1-4.
[47] The membership agreement in *Slowe*, 2008 WL 5115035, at *1, contained the following liability waiver:
> LIABILITY WAIVER. I agree that I am voluntarily participating in activities and use of the facilities and premises (including the parking lot) and assume all risk of injury, illness, damage or loss to me or my property that may result in any loss or theft of any personal property. I further agree that I shall hold this club, its shareholders, directors, employer's representatives and agents harmless from any and all loss, claims, injury, damages or liability sustained by me.
[48] *Id.* at *3-4.
[49] *Id.* at *5.

11

statutory standards set forth in Delaware's public pool regulations."[50]  While health clubs are typically not subject to health and safety regulations, "Delaware has adopted extensive regulations governing swimming pools"[51] and the Defendant in *Slowe* was injured in a swimming pool.  Therefore, the injury in the pool was not subject to limitation by any waiver.

In *Hong,* the Court granted summary judgment for Hockessin Athletic Club and held that the plaintiff's claims were barred because of the liability waiver in the membership agreement.[52] The Court held "[u]nlike in *Slowe*, Plaintiff has not alleged the existence of any dangerous condition on the premises that was the result of the health club's failure to perform its duties, which were statutory and could not have been disclaimed by a liability waiver."[53]  The Court noted "[a]lternatively, notwithstanding the liability waiver, summary judgment should still be granted based on Plaintiff's failure to make a *prima facie* case of negligence . . . [because] [t]he Complaint contains no specific allegations about the nature of HAC's negligence and how it caused [the] injury."[54]

Ms. Hrycak notes that in addition to general allegations of negligence, the Complaint alleges Public Storage's failure to provide adequate lighting for common walkway areas is a proximate cause of her injuries.  Ms. Hrycak argues that she alleged specific allegations of negligent maintenance of lighting on the property in the Complaint which raises a material dispute of fact.  Ms. Hrycak cites the *Hong* Court's discussion of the Plaintiff's failure to assert a *prima facie* case because of the lack of specific allegations of negligence.[55]  Ms. Hrycak is also contending that the Provision is invalid as against public policy.  Ms. Hrycak first contended that

---

[50] *Id.* at *1.
[51] *Id.* at *5.
[52] *Hong v. Hockessin Athletic Club*, 2012 WL 2948186, at *3 (Del. Super. July 18, 2012).
[53] *Id.* at *4.
[54] *Id.* at *3.
[55] Objection, ¶ 3-4 (citing *Hong*, 2012 WL 2948186, at *3-4).

a Wilmington City Ordinance applied and, later, that a New Castle County Property Maintenance Code applied to make the Provision void under public policy.

Here, Public Storage is not arguing that Ms. Hrycak failed to properly assert a negligence claim. Public Storage is moving for summary judgment solely on the grounds that the Provision bars Ms. Hrycak's suit against them. Therefore, the Court's holding is limited to the applicability and scope of the Provision in the present case and not whether Ms. Hrycak properly pled negligence.

### i. Wilmington City Code of Ordinances

In the Objection, Ms. Hrycak argues that Public Storage's facility where the incident occurred is subject to the Wilmington City Code of Ordinances and that Public Storage's inadequate lighting is a violation of Section 34-234(8),[56] Section 5-58(3)(e),[57] and Title 31, Section 4118 of the Delaware Code.[58] Ms. Hrycak cites the Court's discussion from *Hong*[59] and *Slowe*[60] on the limits of liability waivers if they violate public policy.

In the Response, Public Storage argues that the Premises of the slip and fall is not within the Wilmington City limits, and therefore potential ordinance violations cited by Ms. Hrycak do not apply. Public Storage also argues that even if the Premises were subject to the Wilmington City Code of Ordinances the sections Ms. Hrycak cites were not violated by Public Storage. Section 34-234(8) does not apply to Public Storage because it is a "Housing Code"[61] and the unit

---

[56] Wilm. C. § 34-234(8).
[57] Wilm. C. § 5-58(c)(3)(e).
[58] 31 *Del. C.* § 4118.
[59] 2012 WL 2948186, at *3.
[60] *Slowe v. Pike Creek Court Club, Inc.*, 2008 WL 5115035, at *5 (Del. Super. Dec. 4, 2008).
[61] *See* Wilm. C. § 34; see also Wilm. C. § 34-234 (noting that subsection 234 refers specifically to a facility which is "for occupancy" or a "dwelling unit, for the purpose of living therein").

rented to Ms. Hrycak[62] was only meant for the storage of personal property.[63] Public Storage argues that because Section 34-234 does not apply to the Premises, Section 5-58, the enforcement mechanism for Ordinance violations, is not applicable either.[64] Public Storage argues that Title 31, Section 4118 of the Delaware Code is part of the Delaware State Housing Code[65] and, as such, does not apply to the Premises.[66]

The location of Ms. Hrycak's alleged slip and fall is the Public Storage at 3800 Kirkwood Highway, Wilmington, Delaware, 19808.[67] The Premises are located outside of the corporate limits of the City of Wilmington and, therefore, the Wilmington City Code of Ordinances does not apply to Public Storage.[68] Accordingly, the first two ordinances that Ms. Hrycak asserts Public Storage violated are not applicable in this case. In addition, the Court finds that Ms. Hrycak's argument regarding violations of Title 31, Section 4118 of the Delaware Code are misplaced. Title 31, Section 4118 does not apply to the Premises because it is part of the

---

[62] The Agreement provides "[t]he parties have entered into this Lease/Rental Agreement for the purpose of renting the above noted storage space." Motion, Ex. A, ¶ 1.

[63] Neither the walkways to the storage unit nor the unit itself qualifies as a "dwelling unit" or space that's use is for anything except its intended purpose of storage. *See* Wilm C. § 34-1; *see also Walker v. City of Wilmington*, 2014 WL 4407977, at *2 (Del. Ch. Sept. 5, 2014) ("Chapter 34 of the Wilmington City Code, entitled the 'Housing Code' sets forth the minimum property maintenance standards for all dwellings used for purposes of 'living, sleeping cooking or eating therein.'" (quoting Wilm. C. § 34-231)).

[64] Section 5-58 of the Wilmington City Code addresses the point value to violations of other City Ordinances. *See* Wilm. C. § 5-58(c)(3).

[65] *See* 31 *Del. C.* § 4101 ("This chapter shall be known as the Delaware State Housing Code . . . and is herein sometimes referred to as the 'State Housing Code' or 'Code' . . . .").

[66] The Delaware State Housing Code consists of Sections 4101-4135. 31 *Del. C.* §§ 4101-4135. Section 4103 states: "[t]he State Housing Code shall apply to existing residential structures used for human habitation," and "[e]very portion of a building or premises used or intended to be used for residential purposes shall comply with this chapter." 31 Del. C. § 4103. The Premises is not "residential" or "used for human habitation" and therefore the minimum health and safety regulations set forth by Title 31, Section 4118 are not applicable.

[67] Compl. ¶ 2.

[68] *See* Details for Parcel No. 0803930114, New Castle County, Delaware (June 20, 2019, 12:15 P.M. (EDT)), http://www3.nccde.org/parcel/Details/Default.aspx?ParcelKey=60016 (noting that the "Municipal Info" for this Parcel, which is the Premises, is "Unincorporated"); Zoning Map, City of Wilmington, Delaware (June 20, 2019, 12:15 P.M. (EDT)), https://www.wilmingtonde.gov/home/showdocument?id=364 (outlining the corporate limits of Wilmington).

Delaware State Housing Code which relates to residential properties and premises and not commercial properties.

### ii. New Castle County Property Maintenance Code

In the Letter, Ms. Hrycak requests leave to substitute the New Castle County Property Maintenance Code[69] in lieu of the Wilmington City Code of Ordinances. At oral argument, Ms. Hrycak argued that Public Storage violated the New Castle County Property Maintenance Code by failing to maintain adequate lighting. As such, Ms. Hrycak contends that the Release is invalid and does not exculpate Public Storage from liability in this case.

At oral argument, Public Storage asserted that the New Castle County Property Maintenance Code was adopted to give the government an enforcement mechanism for proper maintenance of property in the county and not as a public policy to set health and safety standards for all businesses. Additionally, Public Storage asserts there is no public policy prohibiting the creation of a liability waiver for ordinary negligence. Public Storage argues the Release does not violate public policy and therefore meets the standard set forth in *Ketler*.[70]

The Premises is located in New Castle County boundaries[71] and as such falls within the purview of The New Castle County Property Maintenance Code.[72] The intent of the regulation is to "provide for the health, safety and welfare of the citizens of New Castle County . . . [by] regulating and governing the condition and maintenance of all property, structures[,] and buildings to eliminate or prevent unsafe, unhealthy, unsanitary or substandard conditions."[73] Chapter 7 of the New Castle County Property Maintenance Code adopts "all the sections,

---

[69] 9 *Del. C.* § 2902.
[70] *Ketler v. PFPA, LLC*, 132 A.3d 746, 748 (Del. 2016).
[71] 9 *Del. C.* § 102.
[72] 9 *Del. C.* § 2902.
[73] 9 *Del. C.* § 2902.

15

conditions, and terms of the International Property Maintenance Code."[74]  Chapter 4 of the

International Property Maintenance Code requires:

> Other spaces shall be provided with natural or artificial light sufficient to permit the maintenance of sanitary conditions, and the safe occupancy[75] of the space and utilization of the appliances, equipment, and fixtures.[76]

Public storage facilities such as the one involved in this case would constitute a "building"

subject to the regulations.[77]

The case at bar is distinguishable from *Slowe*.[78]  The Court in *Slowe*, declined to apply a

liability waiver because the public policy surrounding swimming pools is well-developed and

specific.[79]  The Delaware General Assembly promulgated the law at issue in *Slowe*.   The *Slowe*

court discusses at length the "extensive regulations governing swimming pools" noting that "the

regulations provide detailed specifications for pool steps" including tread length, depth, and slip

resistance specifications.[80]  Importantly, the *Slowe* court found that "Delaware's public pool

regulations reflect a clear intent by the legislature to impose statutory duties upon public pool

operators in order to protect the public's health and safety."[81]

Here, Ms. Hrycak relies on the New Castle County Property Maintenance Code and not a

statute promulgated by the Delaware General Assembly or a Delaware adopted regulation that

governs public storage units.  In addition, Ms. Hrycak provides no support that the New Castle

---

[74] New Castle Cty. C. §7.

[75] Occupancy as defined by the code is "[t]he purpose for which a building or portion thereof is utilized or occupied." INTERNATIONAL PROPERTY MAINTENANCE CODE § 202 (2018).

[76] 2018 INTERNATIONAL PROPERTY MAINTENANCE CODE § 402.3(2018).

[77] The definition of building "shall mean a structure having a roof, and intended to shelter persons, animals, property or business activity. The word "building" shall be construed to include parts thereof and all equipment therein." 9 *Del. C.* § 2901.

[78] *Slowe v. Pike Creek Court Club, Inc.*, 2008 WL 5115035, at *5 (Del. Super. Dec. 4, 2008).

[79] *Id.*

[80] *Id.*

[81] *Id.*

County Property Maintenance Code, or the provision relied upon, disapproves of a release in this situation.

Delaware courts respect the right of private parties to contract. The jurisprudence on the applicability of liability waivers is clear that a violation of public policy only occurs when the statewide public policy involved "disapproves of the release."[82] The Court cannot adopt Ms. Hrycak's argument that a violation of the New Castle County Property Maintenance Code means the Provision is void under the public policy of the Delaware. Because the concept of the "public policy" is amorphous, it could be difficult to apply. The Supreme Court has provided a guide—the public policy of Delaware typically is determined by the Delaware General Assembly. Applying the same logic that the Delaware Supreme Court used in *Ketler*, Ms. Hrycak has not purported that there is any public policy disapproving of the release of prospective negligence.[83] Therefore, the release does not violate public policy and the third criterion is met.

## VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Public Storage's Motion for Summary Judgment for Defendant.

**IT IS SO ORDERED.**

*/s/ Eric M. Davis*
Eric M. Davis, Judge

cc:     File&ServeXpress

---

[82] *Ketler v. PFPA, LLC*, 132 A.3d 746, 748 (Del. 2016)
[83] *Id.* (holding "a general release by its nature releases a party from a potential liability otherwise imposed by law. The public policy involved must be one which disapproves of the release.").

17